[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11387
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cv-22151-KMM

APRIL P. FOX,

Plaintiff-Appellant,

versus

FLORIDA DEPARTMENT OF CHILDREN AND FAMILIES,
Child Protective Team,
DAVID OKON,
DCF, CPT Investigator,
JACKSON MEMORIAL HOSPITAL,
DR. MARIA BASTOS,
DR. JOAN ALVARANGA,
ELIZABETH ANTHONY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 29, 2020)

Before WILSON, LAGOA and MARCUS, Circuit Judges.

PER CURIAM:

April Fox, proceeding pro se, appeals the district court's order dismissing her civil complaint for lack of subject-matter jurisdiction based on the Rooker-Feldman[1] doctrine. On appeal, she argues that Rooker-Feldman is inapplicable because she is invoking federal jurisdiction for violations of her constitutional rights, not for appellate review of her state-court dependency case. After careful review, we affirm.

We review a district court's application of the Rooker-Feldman doctrine de novo. Lozman v. City of Riviera Beach, 713 F.3d 1066, 1069–70 (11th Cir. 2013). The party raising a claim bears the burden of proving federal subject-matter jurisdiction. Williams v. Poarch Band of Creek Indians, 839 F.3d 1312, 1314 (11th Cir. 2016). Although we read briefs filed by pro se litigants liberally, we will not address arguments raised for the first time in a pro se litigant's reply brief. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). Liberal construction of pro se pleadings "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." Campbell v. Air Jamaica Ltd., 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotations omitted).

---

[1] The Rooker-Feldman doctrine derives from Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923), and District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983).

Generally speaking, the Rooker-Feldman doctrine bars federal district courts from reviewing state court decisions because lower federal courts lack subject matter jurisdiction over final state-court judgments. See Alvarez v. Att'y Gen. for Fla., 679 F.3d 1257, 1262–64 (11th Cir. 2012). The Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Nicholson v. Shafe, 558 F.3d 1266, 1274 (11th Cir. 2009) (quotations omitted). The doctrine applies not only to federal claims actually raised in the state court, but also to claims that were not raised in the state court but are inextricably intertwined with the state court's judgment. Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009). A claim is inextricably intertwined if it would effectively nullify the state-court judgment or if it succeeds only to the extent the state court wrongly decided the issues. Id. However, it does not apply when a party did not have a reasonable opportunity to raise his or her federal claims in state proceedings. Id.

We've applied Rooker-Feldman principles to child custody proceedings on multiple occasions and have concluded that, under Rooker-Feldman, we may not interfere with final judgments rendered by state courts. See Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332–33 (11th Cir. 2001); Liedel v. Juv. Ct. of Madison Cnty., 891 F.2d 1542, 1545–46 (11th Cir. 1990); Staley v. Ledbetter, 837

3

F.2d 1016, 1017–18 (11th Cir. 1988).   In Staley, for example, we held that the Rooker-Feldman doctrine deprived the district court of jurisdiction over a plaintiff's 42 U.S.C. § 1983 claim in which "[s]he requested reinstatement of parental custody and psychiatric care at state expense for her children and herself" based on alleged violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment.   837 F.2d at 1017.   We concluded that the plaintiff "in essence sought to reverse a state court's child custody determination," when she sought "to challenge collaterally the state agency and court proceedings that terminated her parental rights," noting that "federal courts are not a forum for appealing state court decisions."   Id. at 1017–18.

In Liedel, parents who lost in a state-court child custody action filed suit under § 1983 seeking "a temporary restraining order and a permanent injunction against the Department [of Human Resources] and Juvenile Court, preventing them from enforcing the Juvenile Court's prior orders and preventing them from issuing further orders against the [plaintiffs]."   891 F.2d at 1544.   We reasoned that the requested relief "would effectively nullify those state orders," and therefore held that "[t]o the extent that the [plaintiffs'] federal court complaint seeks to challenge the final state court judgment, it must be dismissed for lack of jurisdiction under the Rooker-Feldman doctrine."   Id. at 1545–46.

4

In contrast, in Goodman, the plaintiff challenged the constitutionality of a search of her home that occurred before the state custody proceedings were initiated and from which no evidence or other information was introduced in state court or relied upon by the court. 259 F.3d at 1332–34. We concluded that her claim was not inextricably intertwined with the state-court custody proceedings because her federal claim could succeed without calling into doubt the state-court decision. Id. at 1334. However, as for her due process challenge to the state's ex parte proceedings, we concluded that the claim was barred for two reasons: (1) it succeeded only to the extent that the state court wrongly decided the custody issue; and (2) Goodman had a "reasonable opportunity" to present her constitutional claims during the state juvenile court proceedings, since Georgia law permitted constitutional challenges to a juvenile court's orders to be brought in juvenile court and those challenges were subject to review by the Georgia Supreme Court. Id.

Florida state circuit courts have exclusive original jurisdiction over termination of parental rights proceedings. Fla. Stat. § 39.801. Any child, parent, or guardian may appeal a Florida state-court order terminating parental rights to the state appellate courts. Fla. Stat. § 39.815; Fla. R. App. P. 9.146 (stating that appeal proceedings in termination of parental rights cases are the same as in civil cases); see also Fla. Dep't of Child. & Fams. v. F.L., 880 So. 2d 602 (Fla. 2004) (addressing a constitutional issue on appeal from a termination of parental rights proceeding).

5

Moreover, we've said that parties to dependency proceedings who were present and participated had "a reasonable opportunity to bring their constitutional challenges" in state court. Goodman, 259 F.3d at 1334.

A district court has supplemental jurisdiction over claims that "form part of the same case or controversy" as the underlying claims to which the court has original jurisdiction. 28 U.S.C. § 1367(a). However, the court may decline to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it had original jurisdiction. Id. § 1367(c)(3).

Here, Fox's complaint stems from a Termination of Parental Rights ("TPR") action the Florida Department of Children and Families ("FDCF") lodged against her, after Fox brought her ten-month-old baby to the hospital with injuries that prompted doctors to report her to FDCF for child abuse. In the state court TPR proceedings, Fox lost her parental rights and her daughter was removed from her home, although Fox was ultimately acquitted of the criminal charges filed in connection with the reported abuse. She then brought this lawsuit in the United States District Court for the Southern District of Florida against FDCF and others, arising out of the FDCP's TPR action.

The record reveals, however, that the district court properly dismissed Fox's federal claims for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. For starters, Fox's claims -- that the appellees violated her constitutional

6

rights -- are inextricably intertwined with the state-court judgment.  Casale, 558 F.3d at 1260.  Specifically, she claimed that FDCF violated her constitutional rights by filing the TPR petition that led to the termination of her parental rights, that a FDCF investigator violated her Fourth and Fourteenth Amendment rights when he removed her daughter from her home, and that a supervisor at the Family Resource Center of South Florida, Inc. violated her Fourteenth Amendment rights by drafting an untruthful TPR petition.  Succeeding on these federal claims would effectively nullify the state-court judgment because it would require the federal court to deem invalid the state court's order terminating her parental rights and stripping her of custody.  See Casale, 558 F.3d at 1260; Liedel, 891 F.2d at 1545–46.  Therefore, her allegations are inextricably intertwined with the underlying state-court dispute concerning the termination of her parental rights.

In addition, Fox had a reasonable opportunity to present her constitutional claims during the TPR proceeding before the state court.  Casale, 558 F.3d at 1260. Fox referenced the TPR petition and trial proceeding that terminated her parental rights several times throughout her complaint and acknowledged her participation in those proceedings.  As in Goodman, Fox had a reasonable opportunity to bring her constitutional challenges in the state-court proceedings.  259 F.3d at 1334.

To the extent Fox argues that the Rooker-Feldman doctrine "fails on its face" because family court is a "court of the [e]xecutive [b]ranch that may not hear

constitutional issues," the Florida Legislature has codified that the state's circuit courts have exclusive original jurisdiction over TPR proceedings. Fla. Stat. § 39.801. Florida's statutory scheme also permitted Fox to appeal the TPR order to the state's appellate courts. Fla. Stat. § 39.815; Fla. R. App. P. 9.146. And we've previously upheld the application of the Rooker-Feldman doctrine to child custody proceedings. See Goodman, 259 F.3d at 1332–34; Liedel, 891 F.2d at 1545; Staley, 837 F.2d at 1017–18. Thus, the Rooker-Feldman doctrine is not prohibited by the underlying nature of Fox's state-court proceeding.

Finally, the district court properly declined to exercise supplemental jurisdiction over Fox's remaining state claims because her federal anchor claims were properly dismissed for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. See 28 U.S.C. § 1367(c)(3). Accordingly, we affirm.[2]

**AFFIRMED**.

---

[2] We add that as for Fox's argument in her reply brief that the Rooker-Feldman doctrine does not apply because she is suing for a violation of her constitutional rights so the Supremacy Clause controls, we will not address arguments raised for the first time in a pro se litigant's reply brief. Timson, 518 F.3d at 874.